UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN EILEEN POPP,

                          Plaintiff,          CASE NO.

V

                                              HON.

LAKESHORE FOODS CORP.,
D/B/A BARNEY'S MARKET

                          Defendant.

---

Marlo D. Bruch (P70362)
Attorney for Plaintiff
Bruch Law Offices, PLLC
229 E. Michigan Ave., Ste. 245-A
Kalamazoo, Michigan 49007
Tele:  (269) 312-8169
Fax:   (269) 743-1181
mdbruch@bruchlawoffices.com

---

There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in the complaint.

### VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Dawn Eileen Popp ("Plaintiff"), by and through her

attorney, Bruch Law Offices, PLLC, and for her Complaint against Defendant, Lakeshore

Foods Corp. d/b/a Barney's Market ("Lakeshore"), and states as follows:

### PARTIES AND JURISDICTION

1.      This is an action for Count I- Gender Discrimination pursuant to the Title

VII of the Civil Rights Act of 1964, as amended based upon being female; Count II- Age

Discrimination pursuant to the Age Discrimination Employment Act of 1967, as

amended; and Count III- Violation of the Federal Equal Pay Act of 1963, as amended.

1

2.      Plaintiff Dawn Eileen Popp ("Plaintiff") is a female over the age of fifty-five (55) years old and is an individual who resides in the County of Berrien, State of Michigan.

3.      Defendant Lakeshore Foods Corp. d/b/a Barney's Market is a Foreign Profit Corporation doing business in Berrien and the resident agent is located at 10 N. Thompson, New Buffalo, Michigan 49117.

4.      Jurisdiction and venue are proper in this Court, as Defendant is doing business in Berrien County, Plaintiff is employed in Berrien and is thus subject to the Court's personal jurisdiction and venue.

5.      The events giving rise to this cause of action occurred in Berrien County, Michigan.

6.      The amount in controversy exceeds $75,000 exclusive of interest, costs and attorney fees and this matter is otherwise within the jurisdiction of this Court.

## COMMON ALLEGATIONS

7.      Plaintiff reincorporates by reference the previous paragraphs of the Complaint as though fully set forth herein, word for word and paragraph for paragraph.

8.      Plaintiff is a female who was over the age of fifty-five (55) when she received adverse employment action of a demotion and a significant cut in her hourly wages based upon the same.

9.      Plaintiff was hired during September July 2006 as a central kitchen clerk making $5.30 per hour.

10.     Defendant has a documented history of demoting females over the age of fifty-five (55) years of age.

2

11.   Women managers are demoted by Defendant to make room for younger male employees.

12.   Women managers when demoted, get a reduction in their pay but male managers do not.

13.   Jobs are created for male co-workers to receive higher wages but no for female employees.

14.   Over the years, Plaintiff was an excellent employee who got great reviews and received numerous merit increases in her rate of pay including promotions.

15.   Plaintiff was the Produce Manager making $17.60 per hour when she was demoted on September 7, 2016 to the Seafood Manager making 12.70 per hour for the false reason that Plaintiff was "low on her gross numbers" shortly after her fifty-fifth (55th) birthday.

16.   Plaintiff's direct supervisor at the time of the demotion was Angela Hamilton, the Corporate Deli Director, who was managed and received her directives from Bob Bline (male), from the Corporate Perishable Department and the Store Manager, Justin Teets (male) who had final authority on all decisions regarding employees.

17.   At the time Plaintiff was demoted, Angela Hamilton told her that she was demoted because of gross numbers [while other male managers had worse gross numbers and were not demoted.]

18.   Diane Doss, a store manager, told Plaintiff around the same time of her demotion that some jobs were being created for male employees so they could support their families.

19. Over the years, Plaintiff has gone above and beyond her normal job duties including doing Food Fairs and Radio Show Food Fairs which were mostly done on her own time for the cooking, etc. unpaid.

20. Plaintiff had done nine shows when she was the Assistant Produce Manager to learn more before Defendant expanded its store.

21. Plaintiff also has done grocery deliveries a lot on her own time unpaid.

22. When Plaintiff was demoted with the huge pay cut, she told Angela Hamilton that she had bills too plus a house payment and lot rent; when Plaintiff told her how much that was she said "oh I didn't know about that."

23. Plaintiff was told she was demoted due to inconsistent grosses. (At the time, Plaintiff's grosses were 36% and the last two priors were mid 30's, which were higher than some male percentages. The standard gross is supposed to be 35% or lower. Management had Plaintiff's assistant take photographs of produce that she missed even though as compared to similarly situated male employees theirs were worse.

24. During the week of September 12, 2016, Plaintiff worked the week at the Al's Franklin location to cut fruit to cover a vacation at that store.

25. Even though Plaintiff had a demotion in pay and title, she was still doing most of her previous Management role/duties.

26. On September 14, 2016, Plaintiff was at the Al's Franklin location and was approached by Jackie Gonser, the Assistant Store Manager and HR.

27. Ms. Gosner told Plaintiff she was sorry what happened to her, that she didn't know the details and asked what Plaintiff thought about getting a job closer to home. (The Al's Franklin store location is 20+ miles away from Plaintiff's residence).

4

28. Ms. Gosner told Plaintiff that probably the only reason Plaintiff stayed with the company was for the insurance.

29. Ms. Gosner then asked Plaintiff if she have ever been on unemployment and then proceeded to ask about her personal life.

30. During September 19–26, 2016, Plaintiff then took her two (2) weeks remaining vacation because Plaintiff didn't know if she still had a job.

31. During late September 2016, Plaintiff made a call to Bob Bline and thanked him for the past 19 years of Employment. He returned Plaintiff's call. They discussed Plaintiff going back to the original store (Barney's) as Seafood Manager because it's closer Plaintiff's home and she knows the Clientele and customers.

32. On or about October 27, 2016, Plaintiff spoke to Debbie (age 50's) that worked in the scanning office at the Al Franklin's location in addition to filling in for vacations.

33. Plaintiff and Debbie were talking about what happened to Plaintiff and she told Plaintiff that she'd been with the company for 32 years and went years with no raises until just recently got one and hit $11.00/hour.

34. Debbie was actually called into the office a few years before and she was told by Jackie Gonser, Assistant Store Manager and Franklin Human Resources, and Jim Ziska, CFO, that they were taking her out of the store office position because they were afraid she would steal money due to her financial situation. (There was no basis for that, she never stole).

35. Debbie was demoted to the deli and had to work her way back up to scanner.

36. After the demotion, Plaintiff was being scheduled for later shifts, even though Plaintiff has two times seniority over all employees (deli) combined and was only given 15 hours to manage the Seafood department and had to work deli to get her hours to keep insurance.

37. Plaintiff was told by Angela Hamilton, Corporate Deli Director, to increase sales and she would get more hours which is contrary to what Plaintiff was already doing with the Wins Radio Food Show/Seafood Roadshows and Store Food Fair.

38. During the week of October 31, 2016, a male deli employee Rhyam, (age early 20's) began getting Plaintiff's early morning and mid shifts.

39. Rhyam had been late almost every day since October 31, 2016 and he was not reprimanded.

40. On November 4, 2016, Plaintiff spoke with Gil Pontius, Owner of Lakeshore, and he told Plaintiff how nice her department looked and sales / grosses.

41. Plaintiff told Mr. Pontius that the Deli Department was very wicked over there and that it was tough.

42. Mr. Pontius shook his head and said that "we'll have to work on this."

43. On November 5, 2016, Plaintiff spoke with Angela Hamilton and told her that she had spoken with Mr. Pontius the day before.

44. Plaintiff told Ms. Hamilton that in the Deli department there was a lot of back stabbing going on.

45. Ms. Hamilton just laughed and said summer will be here soon, meaning Plaintiff would not have to be in the deli.

46.     Titus, age 25, worked whenever he wanted at all stores getting over time including after Labor Day.

47.     During early November 2016, Titus was told by Angela Hamilton, Corporate Deli Director, and Bob Bline, Corporate Perishable Department, to stop getting over time but he continued and no one did anything.

48.     David, age early 30's, (former Assistant Produce Manager at Al's East) took Plaintiff's position as Produce Manager.

49.     David had only been with Defendant for 4 years and was already making almost as much as Plaintiff before her demotion.

50.     David bragged that he would top out pay at $17.60/hour for his October 2016 review.

51.     When Plaintiff was promoted to Manager 4 years before the demotion, she received a $1.00/hour raise to $13.55/hour and then Plaintiff had to work her way up.

52.     Plaintiff always got good evaluations and never called off or was late.

53.     Billy, a male employee in his early 30's, and an Al's Franklin employee, had 99 tardies in an evaluation period (May-October) and still received a mid-score for his evaluation.

54.     Plaintiff always has scored 5's because she was never late.

55.     Titus, previous Al's West Produce Manager, also cheated his numbers repeatedly but nothing was ever done.  He also was selling berries that came from his friends' warehouse (not unethically allowed).

7

56.    Kelly Kliss, Barney's Assistant Produce Manager, and Plaintiff reported it but he still had his position.  Ms. Kliss was the Produce Manager but was demoted to Assistant Produce Manager because she did not meet her grosses.

57.    During early 2016, Titus has also been caught sleeping by security.  Titus has left dock doors unlocked, alarms not set, and has a felony for abuse but still has his job.  He was banned from Al's East for two years from management.  Titus also has ice cream food on the floor and it melted under his watch.  Titus had had product missing from his cooler.  Titus did not receive any disciplinary action regarding any of this.

58.    Bob, Al's East Produce Manager, late 50's, has 30+ years' experience but doesn't know how to scan off stale or out of codes or do changing of scale labels.

59.    Several Male Employees are known to smoke pot and deal pot.  These male employees are Brett, Jeremy, and Josh (now deceased).

60.    In August 2016, Josh, that had been re-hired a few times, passed away from an overdose.  Josh came in high several times once so bad that he looked like a zombie, he sat down in the grocery backroom at the desk and started falling asleep.  Josh was also caught in Defendant's parking lot by security, he was passed out with an aerosol can in his lap.  Nothing was done.

61.    One of Plaintiff's own employees, a male clerk, Mitchell, showed up for work extremely hung over and drunk 2-3 times.  Kelly Kliss, Justin Teets and Plaintiff took him downstairs and spoke to him, offering his help with AA numbers and Counselor numbers, etc).  Mitchell was observed on camera purchasing alcohol (while he was off the clock), going to the parking lot, and contributing to a minor.

8

62.    Gil Pontius was made aware of this by Justin Teets. Mitchell was finally fired by Plaintiff and Justin Teets because he tried to call off Labor Day Holiday Weekend 2016.

63.    At the time of Plaintiff's demotion and to the present date, her Department inspections have been done by the Store Manager, Justin Teets, Plaintiff's inspections were always good (high 90's – 100% usually 100%).

64.    At the time of Plaintiff's demotion and to the present date, seniority doesn't count.  (Summers off are not allowed at Lake stores (Tourism).  No one is allowed to take vacations between Memorial Day through Labor Day, unless they have transferred from somewhere else or has negotiated that as their terms of employment).

65.    During Plaintiff's employment, she was written up one time (in 19 years) and was told it was just a disciplinary action for the record.  Plaintiff was written up during August 2016, because she allegedly had forgotten to pull off some peppers that shouldn't have been on display because they were expired.

66.    Steve, a male was treated better than Plaintiff, currently a Bakery Driver, who was a grocery manager during 2012-2014.

67.    Diane Doss, Store Manager, told Plaintiff that jobs were created so that Steve and Brett could make more money to support their family.

68.    During 2010 or 2011, a job was created for Brett, a male in his early 40's, to become the Frozen Foods Manager, he never did his job.  There was never a Frozen Foods Manager before at the New Buffalo Store.

69.    Rich, a male in his age 50's, (Former Dairy Manager) at Al's West (which closed in late August 2016) was transferred to Al's East not as a manager but as a

9

stocker/clerk but still making his manager pay rate. Rich has told other employees he didn't lose any money. All he does now is stock lunchmeat, some dairy (receiver) technically he's just a clerk making manager pay. Julie Krauss, the office manager, told Plaintiff he kept his same pay.

70.  Jack, a male in his 60's, Al's East Meat Manager, makes around $18.00, he doesn't do anything all day and Bob Bline is aware of this and does not care.

71.  Jerry, a male in his 60's, Al's East Service Case Meat Manager, doesn't do well with that department. Vickie Matz, Assistant Produce Manager, has told Plaintiff that Jerry does not clean the case like it is supposed to or fill it like it is supposed to look but no adverse employment action has happened against him.

72.  Steve, male age 50's, Al's Franklin Produce Manager, has never hit a gross but he still has his job for the last 4 years. Kelly (female) had his position previously was demoted because she could not hit her number.

73.  Phil, age 50's, Barney's Assistant Store Manager, has been with the company for four years. He takes numerous smoke breaks every day at least every hour. Employees are supposed to get two 15-minute breaks for 8 hours of work per employee policy. Phil never works his scheduled hours. Phil comes in early and leaves early. Kimberlee does a lot of his work because Phil leaves early.

74.  Bob, male age late 50's, Al's East Produce Manager, hits his gross profit sometimes only due to cheating his numbers. Even Defendant's supplier knows it but that's okay. Plaintiff's grosses were higher than his and she got demoted.

75.  Andrew, male age 56, used to be a scanning coordinator but was demoted to Office/Cashier during mid-August 2016. He did not receive a cut in pay. Plaintiff was

told by Julie Kraus, the Office Manager, that he did not get a demotion/cut in pay because he does his previous duties one day a week. During April 2016 and Summer 2016, he lost the company hundreds of dollars due to not verifying ads or promos. Hams were incorrectly labeled as .99 cents each instead of per pound. Upon information and belief, Andrew was not written nor any disciplinary action was taken. Andrew has berated employees in front of customers and other employees. Cashiers would be yelled at by Andrew.

76.    Theresa, female age late 50's, another long-term employee of over 20+ years of employment at Lakeshore Foods was recently demoted (again). She has worked as an Assistant Deli Manager for years. Whenever she makes some money Defendant demotes her. Plaintiff was told about Dixie, age 60's, (Deli Manager) and Jordan (age 20's) her nephew also being an Assistant. On October, 27, 2016 Dixie was demoted and lost her assistant pay. The younger nephew got her job and money. She was demoted to deli clerk, plus she gets all the late shifts.

77.    Vicki Matz (age 50's) was demoted so a younger male employee could be promoted to make more money because he was raising a family.

78.    Kimberlee Culp (age mid 30's) is/was doing the job of both the frozen manager as well as the assistant store manager and was not given more wages even though she requested a raise from Gil Pontius.

79.    To the present date and on an ongoing basis, Plaintiff is incurring significant economic losses due to the demotion and cut in pay.

80.     On December 6, 2016, Plaintiff filed her EEOC Charge of Discrimination against Lakeshore on the basis of Age and Gender. (471-2017-00351). Plaintiff received her right to sue letter on May 17, 2017 and timely files this lawsuit.

**COUNT I**
**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, AS AMENDED**

81.     Plaintiff reincorporates by reference the previous paragraphs of the Complaint as though fully set forth herein, word for word and paragraph for paragraph.

82.     At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of the Title VII Civil Rights Act of 1964 as amended (Title VII).

83.     Plaintiff's gender (female) was at least one factor that made a difference in Defendant's decision to demote Plaintiff and drastically cut her hourly wages.

84.     Had Plaintiff been male, she would not have been demoted and had her wages cut.

85.     Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of gender and acted in accordance with that predisposition.

86.     Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated male employees in the terms and conditions of employment, based on unlawful consideration of gender.

87.     Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

88.    Plaintiff was treated differently than similarly situated male employees and/or Defendant's facially neutral employment practices had a disparate impact on Plaintiff.

89.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of the Plaintiff, attorney fees and costs and any other relief this Court deems just and equitable.

## COUNT II
## AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, AS AMENDED

90.    Plaintiff incorporates by reference paragraphs 1 through 89.

91.    At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of the Age Discrimination in Employment Act ("ADEA").

92.    Plaintiff's age was at least one factor that made a difference in Defendant's decision to demote Plaintiff and to significantly cut her wages.

93.    Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

13

94. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated younger employees in the terms and conditions of employment, based on unlawful consideration of age.

95. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

96. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

## COUNT III
## GENDER DISCRIMINATION IN VIOLATION OF EQUAL PAY ACT OF 1963, AS AMENDED

97. Plaintiff reincorporates by reference the previous paragraphs of the Complaint as though fully set forth herein, word for word and paragraph for paragraph.

98. At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of the Federal Equal Pay Act of 1963, as amended ("EPA").

99. Plaintiff's gender was at least one factor that made a difference in Defendant's decision to not pay Plaintiff the same as other similarly situated managers and ultimately part of the reason to demote Plaintiff and drastically cut her hourly wages.

100. Plaintiff was demoted on September 7, 2016 from the Produce Manager making $17.60 an hour and demoted to Seafood Manager making $12.70 per hour making pay significantly less than her similarly situated male counter-parts.

14

SEC. 206.

(d) Prohibition of sex discrimination

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

101. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of gender and acted in accordance with that predisposition.

102. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated male employees in the terms and conditions of employment, based on unlawful consideration of gender.

103. Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

104. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of the Plaintiff, attorney fees and costs and any other relief this Court deems just and equitable.

PLAINTIFF REQUESTS that this court enter judgment against Defendant as follows:

1. compensatory damages in whatever amount above $75,000 she is found to be entitled;

2. exemplary damages in whatever amount above $75,000 she is found to be entitled;

3. an award of lost wages and the value of fringe benefits, past and future;

4. an award of interest, costs, and reasonable attorney fees;

5. an order enjoining Defendant, its agents, representatives, and employees from further acts of discrimination or retaliation;

6. an order reinstating Plaintiff to the position and pay she would have had / hold if Defendant had not discriminated;

7. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: August 8, 2017

Bruch Law Offices, PLLC

By: _Marlo D. Bruch_

Marlo D. Bruch (P70362)
Attorney for Plaintiff
229 E. Michigan Ave., Ste. 245-A
Kalamazoo, MI 49007
(269) 312-8169

I verify that the facts stated in this Verified Complaint are true and, if sworn as a witness, I can testify with personal knowledge as to these facts.

Dated: August 7, 2017

/s/ _Dawn Eileen Popp_

Dawn Eileen Popp

(notarization on next page)

16

STATE OF MICHIGAN )
) ss.
COUNTY OF Berrien )

The foregoing instrument was acknowledged before me this __7__ day of
August, 2017, by Stacia Schable

Notary Public
Berrien County, Michigan
My commission expires: 5/25/23
Acting in Berrien County, MI

## PLAINTIFF'S DEMAND FOR JURY TRIAL.

NOW COMES, Plaintiff, Dawn Eileen Popp, and hereby requests trial by jury pursuant to FR Civ P 38(b).

Dated: August 7, 2017

By: _____
Dawn Eileen Popp

17